**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

| | |
|---|---|
| **EDWIN DEE DENNIS, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No. 3:05-cv-653-WHA-SRW** |
| ) | |
| **LEE COUNTY JAIL** ) | |
| **ADMINISTRATION, et al.,** ) | |
| ) | |
| **Defendants.** ) | |

## DEFENDANTS' SPECIAL REPORT

COME NOW the Defendant designated by Plaintiff as "Lee County Jail Administrations," Major Cary Torbert, Jr., James Eason, Mental Health Officer, and Sergeant Tommy Threat, Defendants in the above-styled cause, and submit this Special Report as follows:

### I.      INTRODUCTION

Plaintiff in this action, Edwin Dee Dennis, Jr., hereinafter "Plaintiff" or "Dennis," filed a Complaint in the United States District Court for the Middle District of Alabama, Eastern Division, on or about July 15 , 2005. This Court entered an Order on July 20, 2005, instructing Defendants to file a Special Report and Answer addressing Plaintiff's claims. The Court, having granting Defendants' Motion for Extension of Time for filing the Special Report and Answer, ordered the same to be filed on or before September 19, 2005. Defendants having filed a Second Motion for Extension of Time, requesting an extension of time up to and including September 23, 2005, are submitting this Special Report, and Answer filed under separate cover, to the Court pursuant to the same.

Plaintiff is incarcerated in the Lee County Detention Facility, having been arrested on February 22, 2005, on the charge of Unlawful Manufacturing of a Controlled Substance and

Trafficking Methamphetamine. The Plaintiff is awaiting trial in this matter and is, therefore a pre-trial detainee.

## II. PLAINTIFF'S SOLE ALLEGATIONS

Plaintiff's sole allegations against Defendants are 1) jail conditions (cleanliness of jail and overcrowding); 2) denial of mental health care; and 3) opening of mail.

## III. DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue, and completely without basis in law or fact. Defendants raise the defenses of Eleventh Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison Litigation Reform Act and additional defenses presented below. Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

A. FACTS

1. Allegations Concerning Jail Conditions

There is one shower per cell block for inmate use. However, the Plaintiff's claim that the shower is not clean, because of mold, is baseless. Cleaning supplies are provided on a daily basis to each cell block by trustees, as correctional officers supervise. The cleaning supplies provided by the trustees include scouring pads, scrub brushes and bleach. These cleaning supplies are passed out each morning after breakfast, medication distribution and head count, generally around 8:00 a.m. Although cleaning supplies are passed out each morning to every inmate for the cleaning of the cell block, an inmate may request at any time throughout the day to receive cleaning supplies and they will be provided. See Affidavit of Cary Torbert, Jr., attached hereto.

In addition to the daily cleaning to be performed by every inmate in the cell block, one time per week a disinfectant solution is provided to the inmates for the washing of walls and the entire

cell block, not just the common areas (tables, floors, commode and shower) that are done on a daily basis.  Further, one time per month, a special solution for the prevention of mildew is provided to inmates for a thorough cleaning of the entire cell.  Also, a high-powered steam cleaning sanitation machine is used around showers and commodes at least one time per month if the Nurses feel it is needed as a health precaution (e.g. flu season).  See Affidavit of Cary Torbert, Jr., attached hereto.

With regard to the Plaintiff's complaint of overcrowding, at times it is necessary – due to classification concerns for the separation of felons and misdemeanants and pre-trial detainees, movement of the inmates due to known enemies, separation of multiple defendants prior to trial and other concerns – that a cell may have additional inmates.  The Plaintiff was housed in the F-wing, which has twelve bunks per cell block, with six cell blocks.  As the F-wing generally houses misdemeanants and pre-trial detainees, there are times that more than twelve men were housed in one of the F-wing cell blocks.  In such instances, the additional inmates were provided mattresses, bedding linens, and blankets for sleeping.  See Affidavit of Cary Torbert, Jr., attached hereto.

Over one year ago, cots were ordered such that during times of housing additional inmates in the cell block, their mattresses could be placed on the cots rather than the floor.  Never has an inmate had to sleep on the floor that he was not provided with a mattress and bed linens.  According to the Plaintiff's inmate file, never has he made any complaint, prior to the time of the filing of this lawsuit, about overcrowding or his sleeping arrangement.  See Affidavit of Cary Torbert, Jr., attached hereto.

Never has Major Torbert received an inmate request form, grievance form, or any verbal comment about the Plaintiff's need for mental health treatment or his alleged denial of the same.  Had a request, verbal or written, or a grievance been made known to Major Torbert, he would have

investigated the matter and forwarded the request to the appropriate personnel. See Affidavit of Cary Torbert, Jr., attached hereto.

Internal grievance procedures at the Lee County Detention Facility are available to all inmates. It is the policy of the Lee County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon. The inmates are given an Inmate Grievance Form to complete and return to a Lee County Detention Facility staff member for any grievances they may have. At no time, however, did the Plaintiff file any grievances concerning any of the claims made in his Complaint. Had such a grievance been filed, it would have been acted upon accordingly, (that is, whether an investigation was needed or simply a response made to the complaints). Further, never did Major Torbert receive any written request form from the Plaintiff concerning any of these matters. Had the Plaintiff made a request concerning these matters there also would have been a response made to such complaints on the written request form. No such request can be found in the Plaintiff's inmate file. See Affidavit of Cary Torbert, Jr., attached hereto.

2.    Alleged of Denial of Mental Health Care

James A. Eason is employed by the Lee County Sheriff's Department and has worked at the Lee County Detention Facility for over two years. He is a Corrections Specialist/Mental Health Officer for the Sheriff's Department. He has received a Bachelor of Science in Physiology and a Masters Degree in Counseling and Counseling Psychology/Rehab Counseling from Auburn University. He is a certified Rehabilitation Counselor, a Certified Vocational Evaluator and a licensed Counselor. See Affidavit of James A. Eason, attached hereto.

Prior to coming to the Lee County Sheriff's Department Officer James Eason worked with the East Alabama Mental Health Center for two years, and in so doing he worked with both the Lee

County and Opelika City Jail inmates.  James Eason also worked at Mount Meigs Youth Detention Facility in 1996.  Thus, he has an extensive background in counseling of incarcerated persons.  <u>See</u> Affidavit of James A. Eason, attached hereto.

It is the policy and procedure of the Lee County Detention Facility to provide prompt medical and/or mental health attention when it is requested, either verbally or in a written inmate request form, by an inmate.  Whenever a request for any kind of mental health treatment is made by an inmate, such a request is forwarded to Officer Eason and he will see the inmate in his office. First, Officer Eason conducts a mental health screening of the inmate, in which he looks for serious mental illness, such as Major Depressive Disorder, a Bipolar Disorder or Schizophrenia.  This is done initially because the Mental Health Center will not accept as a patient anyone who is not suffering from a "serious mental illness," such as described above.  <u>See</u> Affidavit of James A. Eason, attached hereto.

Therefore, when an inmate complains of or exhibits signs of a mere "adjustment disorder," rather that serious mental illness, they are not transferred to or placed on the Mental Health Center list to be seen by a Psychiatrist at the Mental Health Center.  An adjustment disorder, which is the issue with most inmates, is situational.  That is, the inmate was fine in the free world and will be okay once out of jail, but is merely depressed because of their situation (i.e., being locked in jail). Officer Eason does not send inmates with an adjustment disorder to the Mental Health Center.  This decision is based on Officer Eason's knowledge and experience from working with both East Alabama Mental Health Center and incarcerated persons.  <u>See</u> Affidavit of James A. Eason, attached hereto.

When meeting with an inmate regarding mental health issues, if the inmates states that he is under the care of mental health, Officer Eason will call to confirm that the inmate is an active

patient.  If the inmate is an active patient and is on medication, Officer Eason will obtain the next available appointment for the inmate to go to the Mental Health Center to be seen by Dr. Reddy.  If an inmate is an active patient (which means they have been seen by a Mental Health Counselor within the past 90 days) but is not taking medication, the inmate will not be sent to Mental Health as the only reason they would go is to see a therapist, and Officer Eason is a qualified therapist/counselor.  Furthermore, Officer Eason is more readily available and accessible to the inmates than if they were to have to obtain an appointment for a therapist at the Mental Health Center.  Therefore, the only reason to send an inmate to the Mental Health Center is to be seen by the Psychiatrist for a serious mental illness or for medication.  Neither instance applied to the Plaintiff.  See Affidavit of James A. Eason, attached hereto.

The first time Officer Eason met with the Plaintiff was on March 15, 2005, when the Plaintiff stated that he experienced increased anxiety since being incarcerated and that he had two anxiety attacks.  The Plaintiff stated that he could not sleep and needed Prozac.  Dennis informed Officer Eason that he had been prescribed Prozac by Dr. Reddy at East Alabama Mental Health; thus, Officer Eason contacted the Mental Health Center and was informed that this case was inactive as he had last been assessed by Dr. Reddy over two years earlier, on January 14, 2003.  Further, the Plaintiff had failed to do any follow up with East Alabama Mental Health from the time he was released from his previous incarceration, on November 7, 2004, to the time he was arrested for the present incarceration, February 22, 2005.  Further, Officer Eason noted that the "inmate does not meet SMI (Serious Mental Illness) at this time that would warrant further access based on his reported symptomology."  Officer Eason also noted that he would inform the nursing staff of his sleeplessness and that he would continue to follow up with the inmate as needed.  See Affidavit of James A. Eason, attached hereto; see also Correction Specialist Progress Note, attached hereto as

Exhibit 1.

Therefore, at no time was Mr. Dennis refused mental health treatment.  Further, contrary to the Plaintiff's claim that his own record would be with the County Mental Health as being diagnosed with depression, based on Officer Eason's contact with East Alabama Mental Health Center the Plaintiff had not even been to the Center in over two years and was not an active patient. See Affidavit of James A. Eason, attached hereto.

3.     Opening of Mail at the Jail

It is the policy of the Lee County Detention Facility to conduct a mail run every weekday, Monday through Friday, except for holidays, such that inmates can receive outside mail.  All mail comes to the Detention Facility from the Sheriff's Department office, which receives the mail around noon.  A clerk from the Sheriff's Department sorts the mail, separating the Sheriff's Department's mail from the Detention Facility's mail.  A clerk from the Detention Facility then picks up the mail and sorts the inmate mail from jail administration mail.  Generally, Deana Black, the Law Enforcement Record Coordinator, handles the gathering, sorting and inspection of all mail. Ms. Black has worked in this position for five years.  See Affidavit of Cary Torbert, Jr., attached hereto.

After sorting, the clerk inspects inmate mail for contraband or money.  Only non-legal mail is opened by the clerk during such an inspection.  Legal mail remains sealed and is only opened in front of the inmate if it is suspected to contain contraband.  All contraband items removed from inmate mail are placed in the inmate's personal property.  Likewise, any money sent to the inmate through the mail is removed and placed into the inmate's money account.  If the Plaintiff received legal mail that was opened, it was done so by mistake only.  No grievance was filed by the Plaintiff regarding receiving legal mail that was opened.  See Affidavit of Cary Torbert, Jr., attached hereto.

4.    <u>Allegations Against Sergeant Threat</u>

Sergeant Tommy Threat is employed with the Lee County Sheriff's Department and serves as a correctional officer for Lee County Detention Facility.  He has served in such capacity since July, 2000 and has obtained the rank of Sergeant.  Prior to his working with the Lee County Sheriff's Department, he served in the Marine Corp for twenty-one years, retiring with the rank of staff sergeant.  <u>See</u> Affidavit of Tommy Threat, attached hereto.

Sergeant Threat is not personally familiar with any of the allegations made the basis of the Plaintiff's Complaint as he has never received any requests, written or verbal, from the Plaintiff concerning any of these allegations nor has he received any grievance from the Plaintiff concerning any of the allegations made in his Complaint.  <u>See</u> Affidavit of Tommy Threat, attached hereto.

As there is a grievance and request procedure in the Lee County Detention Facility, it could have been used by the Plaintiff.  However, Sergeant Threat never received any such grievance, or request and to the best of Sergeant Threat's knowledge, no grievance or request was ever written by the Plaintiff concerning the allegations made the basis of his Complaint.  <u>See</u> Affidavit of Tommy Threat, attached hereto.

B.    LAW RELATING TO PLAINTIFF'S ALLEGATIONS

1.    <u>Any claim by Plaintiff against Defendants in their official capacity must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C.A. § 1983.</u>

Plaintiff's claims against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution.  <u>Parker v. Williams</u>, 862 F. 2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity);

Free v. Granger, 887 F. 2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity).

In addition, the official capacity claim must fail because 42 U.S.C. § 1983 prohibits a person, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).  Any claim against Defendants in their official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against him in his official capacity fail to state a claim upon which relief can be granted.  Id.; Carr v. City of Florence, Ala., 916 F. 2d 1521, 1525 n.3 (11th Cir. 1990).

     2.    <u>Alternatively, Defendants are entitled to summary judgment based on qualified immunity because nothing in their conduct crossed a "bright line" contour of clearly established constitutional law.</u>

     a.    General Qualified Immunity Standard

Public officials, like Defendants here, are protected in their individual capacity by qualified immunity as long as "a reasonable officer could have believed [his actions] to be lawful, in light of *clearly established law* and the information [that the officer] possessed."  Anderson v. Creighton, 483 U.S. 635, 636 (1987) (emphasis added).  The Eleventh Circuit Court of Appeals has observed, "[t]hat qualified immunity protects governmental actors is the usual rule; only in exceptional cases will government actors have no shield against claims made against them in their *individual capacities*."  Lassiter v. Alabama A & M Univ., 28 F. 3d 1146 (11th Cir. 1994) (en banc) (emphasis in original) (footnote omitted).

Our circuit has divided consideration of qualified immunity into two "prongs" of analysis as articulated in Zeigler v. Jackson, 716 F. 2d 847, 849 (11th Cir. 1983).

> First, "the defendant government official must prove that `he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" <u>Sammons v. Taylor</u>, 967 F. 2d 1533, 1539 (11th Cir. 1992) (quoting <u>Zeigler</u>, 716 F. 2d at 849). "[T]hen the burden shifts to the plaintiff to demonstrate that the defendant violated clearly established constitutional law." <u>Id.</u> (quoting <u>Zeigler</u>, 716 F. 2d at 849).

<u>Jordan v. Doe</u>, 38 F. 3d 1559, 1565 (11th Cir. 1994).

Once it is established that the Plaintiff has stated a claim and that the Defendants were acting within their discretionary authority, the Court then considers whether the contours of the constitutional right allegedly violated were "clearly established." In making this assessment, the reviewing court must examine the state of law *at the time the alleged deprivation occurred*. <u>See</u> <u>Rodgers v. Horsley</u>, 39 F.3d 308, 311 (11th Cir. 1994); <u>Adams v. St. Lucie County Sheriff's Dep't</u>, 962 F. 2d 1563, 1578 (11th Cir. 1992) (Edmondson, J., dissenting), <u>rev'd and reasoning of original dissent adopted</u>, 998 F. 2d 923 (11th Cir. 1993) (en banc).

Not only must the "clearly established" law pre-date the subject incident, the law must be relatively "fact specific" and "so particularized" that it would have been obvious or "apparent" to the defendant that his actions were unlawful. <u>See</u> <u>Rodgers</u>, 39 F. 3d at 311; <u>Hansen v. Soldenwagner</u>, 19 F. 3d 573, 575 (11th Cir. 1994) (both reversing denial of qualified immunity). As the Eleventh Circuit has explained, "[a] plaintiff cannot rely on . . . 'broad legal truisms' to show that a right is clearly established. . . . '[i]f case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant.'" <u>Kelly v. Curtis</u>, 21 F. 3d 1544, 1550 (11th Cir. 1994) (reversing denial of qualified immunity as to some defendants) (quoting <u>Post v. City of Fort Lauderdale</u>, 7 F. 3d 1552, 1557 (11th Cir. 1992)). While the facts of prior cases establishing the law in a particular context need not be identical, they must be at least "materially similar." <u>Adams</u>, 862 F. 2d at 1575 (Edmondson, J., dissenting) (approved en banc, 998 F. 2d 923). This case law must "dictate, that is, truly compel (not just suggest or allow or raise a question

about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law in the circumstances." Id. at 1150.

> b.     Defendants were in no way deliberately indifferent to Plaintiff without regard to his incarceration or any conditions of his confinement.

To determine whether conditions of confinement are unconstitutional, the court must first determine whether the conditions objectively deny the minimally civilized measure of life's necessities. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Even if the conditions meet this initial objective standard, the court must nonetheless consider whether the impositions of the conditions are properly characterized as wanton in light of the constraints facing the prison officials. See Wilson v. Seiter, 111 S. Ct. 2321 (1991).

While some of the aforementioned conditions may appear less than ideal, the Constitution does not mandate comfortable prisons. Rhodes v. Chapman, supra at 349. Furthermore, the Plaintiff has not presented sufficient evidence to show that impairment to his physical or mental condition actually resulted from the aforementioned alleged environment (e.g., sleeping on the floor and mold in the shower).

> c.     Plaintiff has failed to establish any deliberate indifference on the part of Defendants, particularly Officer Eason, to a serious mental health condition from which Plaintiff suffered.

In order to maintain an action under 42 U.S.C. § 1983, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." Hudson v. McMillian, 503 U.S. 1, 9 (1992). Mere negligence does not suffice to prove deliberate indifference. "Deliberate indifference describes a state of mind more blameworthy than negligence." Farmer v. Brennan, 114 S. Ct. 1970, 1978 (1994). Furthermore, where a

prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985). The undisputed evidence demonstrates that the Plaintiff received mental health counseling; thus his claims of a denial of mental health treatment are due to be dismissed.

In addition, a plaintiff must demonstrate a causal connection between the action or inaction of the defendants and the alleged constitutional deprivation. Swint v. Wadley 51 F.3d 988 (11th Cir. 1995). Plaintiff fails to allege any involvement whatsoever by Defendants with the claim of a denial of medical attention. The requisite causal connection may be shown by the personal participation of the Defendants, a policy established by the Defendants resulting in indifference to constitutional rights, or a breach of a duty imposed by state or local law which results in constitutional injury. Zatler v. Wainwright, 802 F.2d 397 (11th Cir. 1986). However, Plaintiff has alleged no facts whatsoever that Defendants were in any way involved in the actions he claims were constitutionally infirm; thus, such a claim has no merit and is due to be dismissed against these Defendants.

3.    Plaintiff has failed to establish an intentional delay of, or interference with his legal mail on the part of Defendants.

In order to state a constitutional violation, Plaintiff must allege an intentional delay of, or interference with his legal mail, and prejudice to the claim which is subject to that mail. See Richardson v. McDonnell, 841 F. 2d 120 (11th Cir. 1988). Incoming prisoner mail from courts, attorneys, and other court officers may be opened only in the presence of the inmate and only for the purpose of locating contraband; however, this mail may not be read by prison personnel. Lemon v. Dugger, 931 F. 2d 1465 (11th Cir. 1991); Taylor v. Sterrell, 532 F. 2d 462, 475 (5th Cir. 1976). "Prison officials may require that all legal mail be clearly marked as such before receiving special treatment." Jackson v. Mowery, 743 F. Supp. 600, 606 (N.D. Ind. 1990).

Plaintiff alleges in a conclusory fashion that his legal mail was opened prior to receiving the mail.  See Plaintiff's Complaint.  However, he presents no specific facts to show that the Defendants he name were in fact the ones who opened his mail.  Plaintiff names Major Torbert and Sergeant Threat, but makes no allegations of wrongdoing against them; obviously, the Plaintiff does not make a claim against Officer Eason regarding his legal mail as Officer Eason has no interaction with or responsibility for the distribution of mail to inmates.  Plaintiff is simply attempting to implicate Major Torbert and Sergeant Threat through the concept of *respondeat superior*.  However, *respondeat superior* is not available to a Plaintiff under § 1983.  Monell v. Department of Social Services of City of New York, 436 U.S. 658 (1978).  Absent some allegation that Major Torbert and Sergeant Threat knew of, sanctioned, participated in or was otherwise "affirmatively linked" to the acts here complaint of, the complaint is insufficient to state a cause of action under 42 U.S.C. § 1983.  See Gilmere v. City of Atlanta, Ga., 774 F. 2d 1495 (11th Cir. 1985) cert. denied, 476 U.S. 1115 (1986).

Plaintiff does not state that he saw any of the Defendants open the mail, nor that anyone else observed them opening the mail.  Furthermore, Plaintiff has not alleged that he was damaged in any way by the alleged opening of mail.  Isolated incidents of prison or jail officials opening legal mail do not rise to a constitutional violation where the evidence does not show a systematic pattern or practice of interference.  Bruscino v. Carlson, 654 F. Supp. 609, 618 (S.D. Ill. 1987), aff'd, 854 F. 2d 162 (7th Cir. 1988), cert. denied, 491 U.S. 907 (1989).  Assuming Plaintiff's legal mail was opened outside his presence, his claim does not rise to a constitutional violation as there is no allegation or proof of any pattern or practice of opening or interfering with the delivery of legal mail.  Hendrix v. Faulkner, 525 F. Supp. 435, 455 (N.D. Ind. 1981), rev'd on other grounds sub

nom, Wellman v. Faulkner, 715 F. 2d 269 (7th Cir. 1983), cert. denied, 468 U.S. 1217 (1984).

Therefore, Plaintiff's claims are due to be dismissed.

    4.    Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983. 42 U.S.C. § 1997e(a). The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him. First, the Plaintiff has not exhausted the grievance procedures provided at the Lee County Detention Facility. Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment. See Brown v. Tombs, 139 F. 3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

Internal grievance procedures at the Lee County Detention Facility are available to all inmates. It is the policy of the Lee County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon. Inmates are given an Inmate Grievance Form to complete and return to a Lee County Detention Facility staff member for any grievances they may have. Grievance forms are placed in the inmate's jail file. No such grievance was filed by the Plaintiff as there is not a grievance form in his jail file concerning the claims made the basis of this Complaint. See Affidavit of Torbert, attached hereto.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60. The Sheriff of Lee County is a state officer and therefore would be entitled to sovereign immunity. See Lancaster v. Monroe County, Ala., 116 F. 3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an

administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.  As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a).  See Alexander v. Hawk, 159 F. 3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies)[1].

> 5.   Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.

42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act requires that a plaintiff demonstrate that he suffered physical injury before instituting a complaint based upon jail conditions.  The PLRA states the following concerning physical injury:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.  42 U.S.C. § 1997e(e).

The Eleventh Circuit has determined that the physical injury requirement of § 1997e(e) requires that a plaintiff demonstrate a physical injury that is more than *de minimis* although the injuries do not have to be significant.  Harris v. Garner, 190 F. 3d 1279, 1286 (11th Cir.), vacated, 197 F. 3d (11th Cir. 1999), reinstated in relevant part, Harris v. Garner, 216 F. 3d 970

---

[1] See Terry Shane Williams v. Cecil Reed, et al., United States District Court for the Northern District of Alabama, Middle Division, No. CV-99-BU-2938-M, slip op. at 3-4 (N.D. Ala. August 15, 2000) (adopted by district judge September 21, 2000) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies at the DeKalb County Jail); Richard Dale Woodham v. Bill Lands, United States District Court for the Northern District of Alabama, Middle Division, No. CV-00-AR-0170-M, slip op. at 4-5 (N.D. Ala. November 7, 2000) (adopted by district judge December 4, 2000) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies at the DeKalb County Jail); Quinton M. Johnson v. Sgt. Robinson, et al., United States District Court for the Middle District of Alabama, Eastern Division, No. CV-00-D-616-E, slip op. at 3-5 (M.D. Ala. January 12, 2001) (adopted by district judge January 31, 2001) (dismissing the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); David Wilson Bell, Sr. v. Tina Riley, et al., United States District Court for the Middle District of Alabama, Eastern Division, No. CV-00-D-731-E, slip op. at 4-5 (M.D. Ala. February 21, 2001) (adopted by district judge March 20, 2001) (dismissing the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); Mitchell Lee Hicks v. Jack Day, et al., Circuit Court of Clarke County, Alabama, No. CV-00-280M, slip op. 1-3 (March 21, 2001) (dismissed the plaintiff's claims without prejudice for his failure to exhaust his administrative remedies with the State of Alabama Board of Adjustment); But see, Garner v. Weeks, No. 00-14582 (11th Cir. April 10, 2001).

(11th Cir. 2000) (en banc).  In the present action, Plaintiff suffered <u>no</u> physical injury as a result

of the allegation described in his Complaint.  As a result, the case is due to be dismissed pursuant

to 42 U.S.C § 1997e(e).

6.    <u>Plaintiff's claims against Defendant Major Torbert must fail because there is no
      <i>respondeat superior</i> liability under § 1983.</u>

Plaintiff does not allege that Defendant Major Torbert, was in any way personally

involved in Plaintiff's alleged constitutional violation.  Defendant therefore construes Plaintiff's

claims against him as an attempt to hold him liable under a *respondeat superior* theory.  To the

extent Plaintiff seeks relief on that basis,

> [Supervisory] liability under § 1983 must be based on something more than a
> theory of *respondeat superior*.  Supervisory liability occurs either when the
> supervisor personally participates in the alleged constitutional violation or when
> there is a causal connection between actions and the supervising official and the
> alleged constitutional violation.  The causal connection can be established when a
> history of widespread abuse puts the responsible supervisor on notice of the need
> to correct the alleged depravation, and he fails to do so.

<u>Dolihite v. Maughon</u>, 74 F. 3d 1027, 1052 (11th Cir. 1996).  Therefore, Plaintiff's claims

against this Defendant are due to be dismissed.

7.    <u>Plaintiff's claim against Defendant Threat is due to be dismissed because he had no
      personal involvement in the alleged constitutional violation.</u>

As to Defendant Sergeant Threat, the Plaintiff fails to allege that said Defendant was in any

way personally involved in any alleged violation of Plaintiff's constitutional rights concerning any

of the conditions of his confinement.  The language of 42 U.S.C. § 1983 requires proof of an

affirmative causal connection between the actions taken by the defendants and the constitutional

deprivation.  <u>Swint v. City of Wadley</u>, 51 F. 3d 988 (11th Cir. 1995).  The requisite causal

connection may be shown by the personal participation of the defendant, a policy established by the

defendant resulting in indifference to constitutional rights or a breach of a duty imposed state of

local law which results in constitutional injury.  <u>Zatler v. Wainwright</u>, 802 F. 2d 397 (11th Cir.

1986). Plaintiff has offered no evidence demonstrating that this named Defendant was in any way involved in the actions he claims were constitutionally infirm.

There are absolutely no facts – in fact, the Complaint is completely devoid of any claim against Sergeant Threat -- to show that this Defendant personally participated in the claims made the basis of the Plaintiff's Complaint, nor does the Plaintiff allege specifically how this Defendant violated his constitutional rights. In fact, Plaintiff merely asserts claims without any sufficient basis for such claims. It is well established that conclusory allegations are insufficient to state a § 1983 claim for relief. See Fullman v. Graddick, 739 F. 2d 553, 556-57 (11th Cir. 1984). Further, the Plaintiff has failed to allege that he was in any way harmed or suffered any injury from the alleged violations of his constitutional rights. As such, Plaintiff's claims are due to be dismissed against this Defendant.

IV.    CONCLUSION

Defendants deny each and every allegation made by Plaintiff in the Complaint. Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

V.    MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a motion for summary judgment, and grant unto them the same.

Respectfully submitted this 23rd day of September, 2005.

s/**Kelly Gallops Davidson**
KELLY GALLOPS DAVIDSON Bar No. DAV123
Attorney for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive (36117)
P.O. Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850

Fax:  (334) 262-1889
E-mail:  kdavidson@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 23rd day of September, 2005, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Edwin Dee Dennis, Jr.
Lee County Detention Center
P.O. Box 2407
Opelika, AL 36803

**s/Kelly Gallops Davidson**
OF COUNSEL